IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **MATTHEW WINANS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:25cv725 |
| | ) |
| **CCOM GLOBAL TECHNOLOGIES, LLC,** | ) |
| and | ) |
| **AXTELL TECHNOLOGIES, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

NOW COMES Plaintiff Matthew Winans, and for his Complaint against Defendants CCOM Global Technologies, LLC, and Axtell Technologies, Inc., alleges and says as follows:

### PARTIES

1. Plaintiff is a citizen and resident of Virginia Beach, Virginia.

2. Defendant CCOM Global Technologies, LLC ("CCOM"), is a Texas limited liability company with its principal office in Virginia Beach, Virginia. CCOM's members are Defendant Axtell Technologies, Inc. ("Axtell"), a Delaware corporation with its principal office in Fort Worth, Texas, and two individuals, both of whom reside and work outside the Commonwealth of Virginia, one in the Netherlands and the other in New York.

### JURISDICTION AND VENUE

3. This is an action for damages and declaratory and other relief arising from the employment of Plaintiff by CCOM pursuant to a written agreement and by Axtell pursuant to an oral agreement.

4. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 U.S.C.

§§ 1332 and 2201.

5. A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district, Defendant's breaches of their contractual obligations were committed in this district, and Plaintiff's damages were sustained in this district. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

6. CCOM employed Plaintiff as its chief executive officer pursuant to a written contract dated October 16, 2023.

7. Under the CCOM employment agreement, CCOM was obliged to pay Plaintiff a "Base Salary" of $350,000 and reimburse him for legal expenses up to $12,500. Upon his termination for any reason other than "Cause," as defined, CCOM was further obliged to pay twelve months of severance at the rate of his Base Salary and continuation of health care benefits for the same period.

8. Under the CCOM employment agreement, Plaintiff was eligible to receive an "Annual Bonus" as determined by the CCOM Board. On April 14, 2025, CCOM awarded Plaintiff an annual bonus of $100,000, payable immediately, but had only paid the net amount of $30,000 as of Plaintiff's termination of employment.

9. Under the CCOM employment agreement, CCOM was obliged to award Plaintiff with stock options representing 15% of the fully diluted share capital of CCOM as an "Equity Incentive Plan." CCOM failed to award the stock options. Upon information and belief, the value of the options to which Plaintiff is entitled exceeds $75,000.

10. Under the CCOM employment agreement, CCOM purported to impose certain post-employment restrictive covenants on Plaintiff: a nondisclosure provision, a noncompete, a

non-solicitation of employees, and a non-interference with business relationships. All of the restrictive covenants relied on the additional consideration of the Equity Incentive Plan stock option grant.

11. Axtell, CCOM's parent, employed Plaintiff as its chief executive officer pursuant to an oral agreement.

12. Under his oral agreement with Axtell, Axtell promised to award Plaintiff 20% of the equity of Axtell for his employment as Axtell's chief executive officer. Upon information and belief, the value of the equity to which Plaintiff is entitled exceeds $75,000.

13. Axtell's sole shareholder is VASS, LLC ("VASS"), a Texas limited liability company. VASS, in turn, is wholly owned by Amit Patel. At all times relevant herein, Patel served on the board of directors of Axtell, and, since May 18, 2025, Patel also served as CCOM's chief financial officer.

14. At all times relevant herein, Plaintiff worked from CCOM's principal office in his home in Virginia Beach.

15. CCOM is in the business of developing and installing physical and other security systems for various industries but in particular the cruise ship industry. CCOM's principal client is Disney Cruise Lines, Disney's cruise ship division ("DCL").

16. Plaintiff has more than twenty years of experience in the field engaged in by CCOM and more than 10 years of experience performing services for DCL.

17. CCOM performs services for DCL on a mutually non-exclusive basis pursuant to a Master Services Agreement ("MSA"). Under the MSA, DCL solicits proposals and issues purchase orders for particular projects. As the CEO of CCOM and due to his longstanding relationship with DCL, Plaintiff managed CCOM's relationship with and performance of services

for DCL.

18. In February, 2025, Axtell organized AMU, LLC, to develop a software program that would perform background checks in conjunction with physical security systems CCOM was already providing.

19. Axtell subsequently renamed AMU as Atlas Global Technologies, LLC ("Atlas"). In January 2025, Axtell contracted with Ryan Scott to develop the software program that is the core of Atlas' business.

20. In June 2025, CCOM hired Janet Kim to serve as its chief operating officer. Kim had no experience in the industry and had no prior relationship with DCL.

21. In August 2025, Plaintiff with other members of CCOM presented the concept of Atlas' software program to DCL. DCL expressed interest in receiving a proposal from CCOM or Atlas for it to consider.

22. In August and September, 2025, Kim engaged in a series of communications and behaviors with employees of DCL without Plaintiff's involvement that alienated DCL personnel.

23. On September 12, 2025, VASS, through Patel, appointed Kim and Scott to the Axtell board of directors. The newly constituted Axtell board purported to place Plaintiff on paid administrative leave from Axtell while a "special committee" comprised of Kim and Scott investigated alleged misconduct by Plaintiff, and appointed Kim as "Interim CEO" of Axtell.

24. The Axtell board did not purport to take any action against Plaintiff as CCOM's CEO.

25. On October 1, 2025, Patel emailed Plaintiff with allegations of "misconduct" and "gross negligence" by Plaintiff in his employment by the "Companies," defined by Patel in the email as Axtell and CCOM. Patel also announced CCOM refused to pay Plaintiff his salary on

the October 1 payday. The email did not comprise notice of breach or default under the terms of the employment agreement: it was not in the form required by or delivered in accordance with the employment agreement, and it failed to provide specific information that would permit Plaintiff to respond and present a plan to cure any alleged breach or default as was his contractual right.

26. Furthermore, Patel's email did not purport to terminate Plaintiff for cause nor did CCOM terminate Plaintiff for cause: instead, Patel's email stated, "If these issues are not cured – or are not curable to the reasonable satisfaction of the Board – the Companies intend to terminate your employment for Cause effective immediately."

27. CCOM did not have any grounds to terminate him for cause as that term is defined in the employment agreement. The allegations in Patel's email were without basis. On October 3, 2025, Plaintiff responded by email to Patel's email, refuting the allegations and requesting clarification of the basis for them. In addition, on the same day, Plaintiff provided CCOM through Patel with notice of breach constituting grounds for his termination of the employment agreement for good reason as defined therein and providing CCOM with the opportunity to cure its breach from CCOM's failure to pay him his salary on October 1 and his bonus, all in compliance with the requirements of the employment agreement.

28. CCOM never responded to Plaintiff's October 3, 2025, refutation of the allegations or to his notice of CCOM's breach.

29. CCOM failed to cure its default within thirty days as required by the employment agreement and even persisted in its wrongful conduct by failing to pay Plaintiff his salary on the October 15 and November 1, 2025, paydays and failing to pay him his previously awarded bonus.

30. As a result, on November 3, 2025, Plaintiff advised CCOM of his termination for good reason under the employment agreement in accordance with its terms. Plaintiff further

provided CCOM with the Release required by the employment agreement to trigger the commencement of the severance pay owed.

31. At no time prior to Plaintiff's termination for good reason had CCOM purported to terminate him for cause.

32. Even had CCOM terminated Plaintiff without cause, CCOM was nevertheless obliged to pay the severance set forth in the employment agreement.

33. Plaintiff has satisfied all conditions precedent necessary to oblige CCOM to pay the severance set forth in the employment agreement.

34. Under the express terms of the Release, it did not bar "rights of the Executive arising under, or preserved by this Release and/or the Employment Agreement, including without limitation any claims or damages relating to a breach thereof[.]"

35. Axtell prepared the documents necessary to effect the equity award to Plaintiff it promised him for his employment but thereafter refused to execute them to award Plaintiff the equity.

### COUNT ONE – BREACH OF CONTRACT BY CCOM

36. The allegations in paragraphs 1 through 35 are realleged as if fully set forth herein.

37. CCOM breached the employment agreement by failing to pay Plaintiff the salary to which he was entitled under from September 15 through November 2, 2025.

38. CCOM breached the employment agreement by failing to pay Plaintiff the balance of his $100,000 bonus.

39. CCOM breached the employment agreement by failing to reimburse Plaintiff for legal expenses.

40. CCOM breached the employment agreement by failing to award Plaintiff with stock

options representing 15% of the fully diluted share capital of CCOM.

41. Plaintiff has been damaged by CCOM's breach.

**COUNT TWO – VIOLATION OF THE VIRGINIA WAGE PAYMENT ACT BY CCOM**

42. The allegations in paragraphs 1 through 41 are realleged as if fully set forth herein.

43. Plaintiff has been damaged by CCOM's failure to pay the wages due to him, i.e., 48 days of salary and the balance of his $100,000 gross bonus, on the regular paydays established by CCOM and upon the termination of his employment.

44. CCOM is liable for double the amount of unpaid wages pursuant to Va. Code § 40.1-29.J.

45. CCOM's conduct was knowing as defined in Va. Code § 40.1-29.K, making it liable for triple the amount of unpaid wages pursuant to Va. Code § 40.1-29.J.

46. CCOM is liable for prejudgment interest on the unpaid wages at the rate of 8% from each date of nonpayment pursuant to Va. Code § 40.1-29.G & J.

47. CCOM is liable for Plaintiff's attorney fees and costs pursuant to Va. Code § 40.1-29.J.

**COUNT THREE – DECLARATORY JUDGMENT OF INVALID NONCOMPETE AND OTHER RESTRICTIVE COVENANTS**

48. The allegations in paragraphs 1 through 47 are realleged as if fully set forth herein.

49. The employment agreement purports to impose a noncompete on Plaintiff for twelve months as follows:

> Non-Competition. By and in consideration of the Company's entering into this Agreement, and in further consideration of Executive's exposure to the Confidential Information, Executive agrees that Executive shall not, during the Restricted Period (as set forth on the Employment Term Sheet), directly or indirectly, own, manage, operate, join, control, be employed by or participate in the ownership, management, operation or control of, or be connected in any manner by performing the same or substantially similar services

> that he or she performed for the Company, including, without limitation, holding any position as a stockholder, director, officer, consultant, independent contractor, employee, partner, or investor in, any Restricted Enterprise (as set forth on the Employment Term Sheet); provided, however, that in no event shall ownership of one percent or less of the outstanding securities of any class of any issuer whose securities are registered under the Securities Exchange Act of 1934, as amended, standing alone, be prohibited by this Section 4.2, so long as Executive does not have, or exercise, any rights to manage or operate the business of such issuer other than rights as a stockholder thereof.

50. The employment agreement purports to impose a non-solicitation of employees for twelve months of any member of the "Company Group."

51. The employment agreement purports to impose a prohibition on interference with business relationships for twelve months for the benefit of the "Company Group."

52. The Employment Term Sheet defines the "Restricted Period" as twelve months and a "Restricted Enterprise" as any "Software, security, or technology company."

53. The noncompete is overly broad and unenforceable under Virginia law. It fails to protect a legitimate interest of the employer by its excessive scope of purporting to prohibit Plaintiff's employment anywhere in the world by any "Software, security, or technology company."

54. The noncompete and the other restrictive covenants also fail for a lack of consideration, as they are all predicated on the award of the stock options CCOM failed to award.

55. The value of the relief sought exceeds $75,000 in terms of the employment opportunities to Plaintiff the restrictive covenants purport to foreclose and prohibit for their term.

56. An actual controversy between Defendants and Plaintiff exists as to the unenforceability of the noncompete and the other restrictive covenants.

57. Plaintiff requests a declaration that the restrictive covenants are unenforceable.

**COUNT FOUR – DECLARATORY JUDGMENT OF ENTITLEMENT TO SEVERANCE UNDER THE EMPLOYMENT AGREEMENT AGAINST CCOM**

58. The allegations in paragraphs 1 through 57 are realleged as if fully set forth herein.

59. The employment agreement defines "Good Reason" as "(A) a material breach by the Company of any of the covenants in this Agreement: (B) any material reduction in the Base Salary; or (C) any material and adverse change in Executive's position, title, job duties, authority or responsibilities to those of lesser status" identified by Plaintiff to CCOM within thirty days of the breach and not thereafter cured within thirty days by CCOM.

60. An actual controversy between CCOM and Plaintiff exists as to the characterization of his termination of employment and his resulting entitlement to the severance set forth in the employment agreement. The value of the relief sought exceeds $350,000 in the benefits payable under the contractual severance.

61. Plaintiff requests a declaration that the contractual severance is due.

**COUNT FIVE – BREACH OF CONTRACT AGAINST AXTELL**

62. The allegations in paragraphs 1 through 61 are realleged as if fully set forth herein.

63. Axtell breached its agreement with Plaintiff by failing to award Plaintiff with 20% of the equity in Axtell.

64. Plaintiff has been damaged by Axtell's breach.

**COUNT SIX – DECLARATORY JUDGMENT AXTELL IS NOT WITHIN THE "COMPANY GROUP" DEFINED IN THE EMPLOYMENT AGREEMENT**

65. The allegations in paragraphs 1 through 64 are realleged as if fully set forth herein.

66. The employment agreement defines the "Company Group" to include the "direct and indirect subsidiaries and affiliates" of CCOM.

67. Axtell is the parent of CCOM, not a subsidiary or affiliate.

68. An actual controversy exists between Plaintiff and Axtell whether Axtell is within

9

the scope of "Company Group" defined in the CCOM employment agreement including its restrictive covenants for non-interference with customers and non-solicitation of employees in addition to the noncompete and the Release. The value of the relief sought exceeds $75,000 in terms of the employment opportunities to Plaintiff the restrictive covenants purport to foreclose and prohibit for their term should Axtell be within the definition.

69. Plaintiff requests a declaration that Axtell is not within the definition of "Company Group" in the CCOM employment agreement.

WHEREFORE, Plaintiff respectfully prays the Court:

1. That he be awarded consequential and incidental damages from CCOM from its breach of contract;

2. That he be awarded unpaid wages, trebled, prejudgment interest on the unpaid wages, attorney's fees, and other relief from CCOM under the Virginia Wage Payment Act;

3. That he be awarded consequential and incidental damages from Axtell from its breach of contract;

4. For a declaration that the noncompete and other restrictive covenants in the employment agreement are unenforceable;

5. For a declaration that Plaintiff is entitled to the severance benefits set out in the employment agreement;

6. For a declaration that Axtell is not within the scope of the term "Company Group" in the employment agreement;

7. For a trial by jury on all issues so triable; and,

8. For such other and further relief as the Court may deem just and proper.

This the 6th day of November, 2025.

**MATTHEW WINANS**

___/s/_____
Counsel

James R. Theuer (VSB #68712)
JAMES R. THEUER, PLLC
555 E. Main St., Suite 1212
Norfolk, VA  23510
Tel: (757) 446-8047
jim@theuerlaw.com

Matthew J. Moynihan (VSB #86430)
BISCHOFF MARTINGAYLE, P.C.
208 East Plume St., Ste 247
Norfolk, VA  23510
Tel: (757) 935-9193
Fax: (757) 440-3924
mjm@bischoffmartingayle.com
*Counsel for Plaintiff Matthew Winans*

11